No. 96-083

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

IN RE MARRIAGE OF

JOYCE S. COWAN,

      Petitioner and Respondent,

  and

ARDEN R. COWAN,

      Respondent and Appellant.

FILED

NOV 26 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Twenty-First Judicial
District, In and for the County of Ravalli,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

            John H. Gilliam, Skjelset & Gilliam, P.L.L.P.,
            Missoula, Montana

      For Respondent:

            Clinton H. Kammerer, Kammerer Law Offices,
            Missoula, Montana

Submitted on Briefs: September 19, 1996

Decided: November 26, 1996

Filed:

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

On April 4, 1995, Arden Cowan moved the District Court for the Twenty-First Judicial District in Ravalli County to modify his child support obligation. His former spouse, Joyce Cowan, opposed the motion and filed a motion to have Arden held in contempt for failure to pay past support. Following a hearing at which both motions were considered, the District Court increased Arden's child support obligation from $250 to $762 per month. The District Court refused to reduce Arden's arrearages by the amount recommended by the Child Support Enforcement Division (CSED), and refused to credit certain Social Security benefits against his past due obligation. The District Court also denied Joyce's motion to hold Arden in contempt. Arden appeals the District Court's order which modified his child support obligation and which refused to grant him credit against his arrearages. We affirm in part and reverse in part the order of the District Court and remand to that court for a determination of Arden's child support obligation consistent with this opinion and with the Uniform Child Support Guidelines.

We address five issues on appeal:

1. Did the District Court abuse its discretion when it modified Arden's child support obligation without considering the factors set forth in § 40-4-204, MCA, and the Uniform Child Support Guidelines?

2. Did the District Court err when it refused to apply the monthly Social Security disability payments made to Arden's children toward Arden's monthly child support obligation?

2

3. Did the District Court err when it refused to apply the monthly Social Security disability payments made to Arden's two children in excess of Arden's support obligation as a credit toward his accrued arrearages?

4. Did the District Court err when it refused to apply the Social Security lump sum disability payment made to Arden's two children as a credit toward his accrued arrearages?

5. Did the District Court err when it refused to reduce Arden's accrued arrearages by $1,593.20, as recommended by the Child Support Enforcement Division?

FACTUAL BACKGROUND

In 1982, the District Court for the Twenty-First Judicial District dissolved the marriage of Arden and Joyce Cowan and awarded Joyce monthly child support in the amount of $100 per child for each of the couple's two children. Joyce filed a petition for modification of child support on December 5, 1988, and the District Court increased Arden's child support obligation to $200 per month per child beginning June 15, 1989.

In January 1994, Joyce filed a motion in the District Court to have Arden held in contempt for his failure to keep his child support obligation current. At that time, Arden's past due child support amounted to $17,700, and he owed an additional $800 for attorney fees. Following a hearing at which Joyce's motion was considered, the District Court adjudged Arden in contempt of court and entered a judgment against Arden in the amount of $18,550. However, based on its finding that Arden had been "beset with

3

financial hardships attributable to health and unemployment," the court reduced Arden's child support obligation to $250 per month for both children.

Arden filed a motion to further modify his child support obligation in April 1995. By that time, the Social Security Administration (SSA) had determined that he had been disabled since November 1992 and had awarded him monthly benefits in the amount of $924, retroactive to May 1993. The SSA had also awarded Arden's children $512 per month retroactive to the same date. Based on the Social Security payments, Arden alleged in his petition that his child support should be modified because of "changed circumstances so substantial and continuing as to make the terms [of the decree] unconscionable," pursuant to § 40-4-208, MCA. Specifically, Arden maintained that (1) his child support obligation should be modified to conform to the Uniform Child Support Guidelines; (2) his support obligation should be modified to reflect a credit for Social Security disability benefits paid to the children; and (3) any Social Security disability benefits received by his children that exceeded his support obligation should be applied as a credit against his accrued arrearages.

Before Arden filed his motion for modification of his child support obligation, the SSA delivered to him two lump sum payments totaling $19,456.00 for Social Security benefits earned from the date of his entitlement to the date of payment. After Arden filed his motion, the SSA sent to Joyce a lump sum payment of $9,728.00 representing benefits to the children as a result of Arden's

4

disability. In addition, the CSED determined that Arden's child support arrearages should be reduced by $1,593.20.

Following the distribution by the SSA of the lump sum payments, and the recommendation by CSED that Arden's arrearages be reduced, Arden filed a brief in support of modification of his child support obligation. In his brief, Arden contended that both the lump sum payment received by his children and the amount of monthly Social Security payments paid in excess of his child support obligation should be credited against his accrued arrearages. Arden further contended that those accrued arrearages should be reduced by the amount recommended by the CSED.

Following a hearing at which Arden's motion to modify his child support obligations and Joyce's motion for contempt were considered, the District Court issued its findings of fact, conclusions of law, and order. In its order, the court modified Arden's child support obligation from $250 per month to $762 per month. Although the court did not specifically address the reduction of Arden's arrearages by either the amount recommended by the CSED or by the amounts paid for Social Security benefits, the court stated that it "[found] generally for Joyce and against Arden on all issues not specifically addressed herein." The District Court denied Joyce's motion to hold Arden in contempt.

STANDARD OF REVIEW

We review a district court's findings of fact and conclusions of law which underlie an order for the modification of child support to determine whether the court's findings of fact are

5

clearly erroneous and whether its conclusions of law are correct. *In re Marriage of Brandon* (1995), 271 Mont. 149, 151-52, 894 P.2d 951, 952-53. We review the court's decision to modify child support to determine whether the court abused its discretion. *In re Marriage of Kovash* (1995), 270 Mont. 517, 521, 893 P.2d 860, 863.

## ISSUE 1

Did the District Court abuse its discretion when it modified Arden's child support obligation without considering the factors set forth in § 40-4-204, MCA, and the Uniform Child Support Guidelines?

On April 4, 1995, Arden Cowan filed a motion for modification of his child support obligation. Arden maintained that his circumstances had changed substantially, as evidenced by the SSA's determination in January 1995 that he is totally disabled. Because his disability precludes meaningful employment, Arden asserted that his child support obligation of $250 per month was "unconscionable" and should be reduced to conform with the Montana Child Support Guidelines.

It is well established that "[w]henever the court issues or modifies an order relating to child support, the district court is required to determine the child support obligation on the basis of the factors set out in § 40-4-204(1) and (2), MCA, and the Uniform Child Support Guidelines." *In re Marriage of Wackler* (1993), 258 Mont. 12, 15, 850 P.2d 963, 965. In this case, the District Court's specific obligations with respect to Arden's child support determination are set forth in § 40-4-204, MCA (1993), which provides in pertinent part:

6

(2) The court shall consider all relevant factors, including:

(a) the financial resources of the child;

(b) the financial resources of the custodial parent;

(c) the standard of living that the child would have enjoyed had the marriage not been dissolved;

(d) the physical and emotional condition of the child and the child's educational and medical needs;

(e) the financial resources and needs of the noncustodial parent;

(f) the age of the child;

(g) the cost of day care for the child;

(h) any custody arrangement that is ordered or decided upon; and

(i) the needs of any person, other than the child, whom either parent is legally obligated to support.

(3) (a) Whenever a court issues or modifies an order concerning child support, the court shall determine the child support obligation by applying the standards in this section and the uniform child support guidelines adopted by the department of public health and human services pursuant to 40-5-209. The guidelines must be used in all cases . . . . The amount determined under the guidelines is presumed to be an adequate and reasonable support award, unless the court finds by clear and convincing evidence that the application of the standards and guidelines is unjust to the child or to any of the parties or is inappropriate in that particular case.

(b) If the court finds that the guideline amount is unjust or inappropriate in a particular case, it shall state its reasons for finding that the application of the standards and guidelines is unjust to the child or a party or is inappropriate in that particular case. Similar reasons must also be stated in a case in which the parties have agreed to a support amount that varies from the guideline amount. Findings that rebut and vary the guideline amount must include a statement of the amount of support that would have ordinarily been ordered under the guidelines.

(Emphasis added.)

In this case, the District Court modified Arden's child support obligation based upon its conclusion that "$762.00 per month contribution is reasonable considering all the circumstances." However, the court made no finding regarding Arden's yearly income and admitted that it "[had] no data as to

7

Joyce's income." The court, in fact, made no attempt to apply the Uniform Child Support Guidelines or to consider the factors set forth in § 40-4-204, MCA. Instead, the court cavalierly stated: "Whether [the $762 monthly obligation] meets the criteria of the so called mandatory guide lines, the Court will leave to the Child Support Enforcement Division."

We have repeatedly held, however, that the district court must consider the Uniform Child Support Guidelines and the statutory criteria set forth at § 40-4-204, MCA, when it makes its child support determination. *See, e.g., Brandon*, 271 Mont. at 154, 894 P.2d at 954; *In re Marriage of Griffin* (1993), 260 Mont. 124, 140, 860 P.2d 78, 88; *Wackler*, 258 Mont. at 15, 850 P.2d at 965. The purpose of that requirement is to ensure that there is an evidentiary basis upon which a court's child support determination is based. *In re Marriage of Kukes* (1993), 258 Mont. 324, 328, 852 P.2d 655, 657. Failure to set forth findings that demonstrate that the statutory criteria have been considered is a clear abuse of discretion. *Griffin*, 260 Mont. at 140, 860 P.2d at 88.

In this case, the District Court failed to set forth any factual basis to support its conclusion that Arden's child support obligation should be increased to $762 per month. Furthermore, those findings that the court did make with regard to Arden's ability to contribute to his children's support were not supported by substantial credible evidence. For example, although the court found that Arden was capable of contributing $250 per month from his self-employment income, the evidence submitted at trial

8

demonstrated that Arden had only earned a cumulative total of $700 to $1,000 in the twenty months preceding the district court hearing. In addition, although the court found that Arden had regularly worked as a professional hunting guide and as an electrician, Arden testified that he had never received any monetary payment for his services as a guide and that he had only earned about $1,000 performing odd jobs as an electrician. Clearly, the evidence submitted at trial did not establish Arden's capacity to contribute $250 monthly in addition to Social Security benefits his children were already being paid.

Therefore, because the District Court failed to apply the Uniform Child Support Guidelines and § 40-4-204, MCA, when it ordered the modification of Arden's support obligation, and because those findings that the District Court did make with regard to Arden's ability to contribute to his children's support were not supported by substantial credible evidence, and were, therefore, clearly erroneous, we hold that the District Court abused its discretion when it modified Arden's monthly child support obligation from $250 to $762. We therefore reverse the District Court's order modifying Arden's child support obligation and remand to that court with instructions that the court consider the Uniform Child Support Guidelines, the factors listed in § 40-4-204, MCA, and Rule 46.30.1542, ARM, and enter findings of fact which support its child support award.

ISSUE 2

Did the District Court err when it refused to apply the monthly Social Security disability benefits paid to Arden's children toward Arden's monthly child support obligation?

In this case, the District Court concluded that Arden's child support obligation should be adjusted to $762 per month--$512 to be paid from the Social Security disability payments and $250 to be paid by Arden. The court's order did not alter Arden's standard $250 monthly obligation, but, in effect, denied Arden the opportunity to offset that obligation with the Social Security disability payments. On appeal, Arden maintains that the Social Security disability benefits received by his children should have been credited against the amount of his monthly obligation, as required by this Court in *In re Marriage of Durbin* (1991), 251 Mont. 51, 823 P.2d 243.

In *Durbin*, this Court held that the receipt of Social Security benefits by a child based on a parent's disability following a dissolution of marriage should serve as a credit toward that parent's child support obligation. *Durbin*, 251 Mont. at 58, 823 P.2d at 247. We concluded, however, that such an offset constituted a modification of the original child support decree, pursuant to § 40-4-208(1), MCA, and limited the application of the credit to those payments which accrued after the petition for modification of child support had been filed. *Durbin*, 251 Mont. at 58, 823 P.2d at 247. Accordingly, we held that the non-custodial father in *Durbin* was entitled to a credit for those Social Security

10

benefits received by his children after he had filed a motion to modify his child support obligation, but denied him credit for those benefits received prior to the date on which he filed his petition. *Durbin*, 251 Mont. at 58, 823 P.2d at 247. Our holding was based, in part, on the language of § 40-4-208(1), MCA, which provides that a dissolution decree can be modified "only as to installments accruing subsequent to actual notice to the parties of the motion for modification." (Emphasis added.)

Upon further review of *Durbin*, however, we are persuaded that we were incorrect when we concluded that an offset of a child support obligation by Social Security benefits constitutes a modification of the original child support order. As this Court noted in *Durbin*, Social Security benefits are paid as a result of a parent's disability and serve as a substitute for that parent's lost earning capacity. *Durbin*, 251 Mont. at 58, 823 P.2d at 249. As such, those payments are simply a replacement for a parent's lost wages due to an acknowledged disability. Thus, a credit for those Social Security benefits does not retroactively modify the disabled parent's monthly child support obligation; it merely changes the source of the payments. Therefore, although we affirm that portion of *Durbin* which allowed a credit against a noncustodial parent's child support obligation for Social Security benefits received by his children, we reverse that portion of the opinion which held that a credit for Social Security benefits received prior to the motion to modify would constitute a retroactive modification of the district court's original child support order.

11

We also reverse *In re Marriage of Malquist* (1994), 266 Mont. 447, 880 P.2d 1357, to the extent that it adopted *Durbin*'s rationale.

A majority of states follows the rule that Social Security benefits received as a result of a parent's disability do not modify a parent's original child support obligation. *See, e.g., Perteet v. Sumner* (Ga. 1980), 269 S.E.2d 453; *In re Marriage of Henry* (Ill. 1993), 622 N.E.2d 803; *Board v. Board* (Ky. 1985), 690 S.W.2d 380; *Mooneyham v. Mooneyham* (Miss. 1982), 420 So. 2d 1072; *Weaks v. Weaks* (Mo. 1991), 821 S.W.2d 503; *Hanthorn v. Hanthorn* (Neb. 1990), 460 N.W.2d 650; *Griffin v. Avery* (N.H. 1980), 424 A.2d 175; *Mask v. Mask* (N.M. 1980), 620 P.2d 883. The Illinois Supreme Court, for example, has acknowledged that Illinois law provides for modification of only future child support installments, but has held that "a distinction exists between 'crediting an obligation with payment made from another source and increasing, decreasing or terminating, or otherwise modifying a specific dollar amount.'" *Henry*, 622 N.E.2d at 808. Based on its conclusion that the substitution of Social Security benefits is not a retroactive modification of child support, the court has concluded that

> because social security dependent disability benefits are earned by the noncustodial parent, made on behalf of such parent, and, in fact, paid at least in part with contributions from the noncustodial's own earnings, payment of social security dependent disability benefits satisfies a noncustodial parent's child support obligation.

*Henry*, 622 N.E.2d at 809.

12

Other courts have rejected *Durbin*'s rationale that there need be a modification of the original divorce decree before Social Security payments can be credited toward a parent's support obligation. The Missouri Supreme Court, for example, has held that the minority view, as set forth in *Durbin*, is "harsh and unjust." *Weaks*, 821 S.W.2d at 506. That court stated:

> A minority of states follows the rule that a credit for social security disability payment is available against the child support obligation only *after* a modification by the trial court.
>
> . . . .
>
> This view, followed by a distinct minority of jurisdictions, is harsh and unjust. To impose the requirement of a court proceeding, *i.e.*, modification hearing, on a party seeking to credit disability payments received by the custodial parent for the benefit of the parties' children is overly harsh. In situations involving disability benefits, the party seeking credit most likely faces a reduction of income, financial uncertainty, physical or mental impairment and other attendant consequences of the disability. The additional burden of petitioning the court for a modification typically wastes time and money and helps no one.

*Weaks*, 821 S.W.2d at 506-07.

In this case, the Social Security benefits received by Arden's children were paid as a result of Arden's disability and were a substitute for Arden's lost earning capacity. Accordingly, we hold that those benefits should be treated as a contribution from Arden toward the support of his children and should serve as a credit toward Arden's monthly obligation. We further hold that the substitution of the Social Security benefits for Arden's child support obligation does not constitute a retroactive modification of the District Court's original child support order, and was

13

therefore immediately effective as a credit against Arden's child support obligation.

In this case, because Arden's monthly $250 child support obligation was completely offset by the monthly $512 Social Security benefit paid to his children, we hold that Arden was not liable for any contributions after the Social Security benefits began. We therefore hold that Arden should be credited for any contributions made by him personally since that time and that those credits should be applied to Arden's accrued arrearages. *See, e.g., Miller v. Miller* (Ky. Ct. App. 1996), 929 S.W.2d 202, 205.

On the basis of our holdings, we reverse the District Court's order which denied Arden the opportunity to offset his obligation with the Social Security disability benefits received by his children and remand to the District Court with instructions to (1) credit the Social Security benefits received by Arden's children against Arden's monthly child support obligation, and to (2) credit Arden for any contributions made by him after the Social Security benefits began and apply that credit to any arrearages owed by Arden.

## ISSUE 3

Did the District Court err when it refused to apply the monthly Social Security disability payments made to Arden's two children in excess of Arden's support obligation as a credit toward his accrued arrearages?

In this case, the District Court did not apply the Social Security disability payments received by Arden's children as a

14

credit toward Arden's support obligation, but instead increased Arden's obligation to a sum equal to the total of his $250 monthly support obligation and the $512 monthly Social Security benefit. On appeal, Arden maintains that the District Court should have offset his $250 monthly obligation with the $512 Social Security payment and credited the remaining $262 per month to his existing arrearages.

Although the question of excess benefits has not yet been addressed by this Court, the majority of jurisdictions faced with this issue have not allowed the application of excess benefits to reduce arrearages. *See, e.g., Windham v. State ex rel. Windham* (Ala. Civ. App. 1990), 574 So. 2d 853; *In re Marriage of Robinson* (Colo. Ct. App. 1982), 651 P.2d 454; *Kirwan v. Kirwan* (Fla. Dist. Ct. App. 1992), 606 So. 2d 771; *Newman v. Newman* (Iowa 1990), 451 N.W.2d 843; *In re Marriage of Williams* (Kan. 1995), 900 P.2d 860; *Weaks v. Weaks* (Mo. 1991), 821 S.W.2d 503; *Fuller v. Fuller* (Ohio Ct. App. 1976), 360 N.E.2d 357; *Children & Youth Servs. v. Chorgo* (Pa. Super. Ct. 1985), 491 A.2d 1374. Those courts reason that "[a]ny excess is deemed a gratuity to the extent that it exceeds the amount of support mandated by the decree." *Weaks*, 821 S.W.2d at 507.

This view is consistent with the administrative rules of the Department of Public Health and Human Services. Specifically, Rule 46.30.1542(1)(b), ARM, which the Department was authorized to adopt pursuant to § 40-5-202(12), MCA, provides:

> (1) Social security benefits which are based on the earning record of the non-custodial parent shall be

considered in establishing new support orders or modification of existing orders under the following conditions:

. . . .

(b) the parent's obligation is satisfied if the amount of the of the child's benefit for a given month is equal to or greater than the parent's child support obligation. <u>Any benefit received by the child for a given month in excess of the child support obligation is not treated as an arrearage payment or as future support</u>

. . . .

(Emphasis added.)

In accord with the other jurisdictions cited that have addressed this issue, and with Rule 46.30.1542(1)(b), ARM, we hold that Arden is entitled to credit for the amount of his monthly obligation for child support, but not exceeding that amount. Therefore, although we hold that the District Court abused its discretion when it failed to apply the Social Security benefits received by Arden's children toward Arden's monthly support obligation, we further hold that it did not abuse its discretion when it failed to apply any excess monthly benefits to Arden's accrued arrearages. We therefore affirm that part of the District Court's judgment.

## ISSUE 4

Did the District Court err when it refused to apply the Social Security lump sum disability payment made to Arden's two children as a credit toward his accrued arrearages?

In this case, the District Court made no specific determination that the Social Security lump sum benefits received by Arden's children should or should not be credited toward Arden's accrued arrearages. Instead, the court made a sweeping finding

16

"against Arden on all issues not specifically addressed" in its order. On appeal, Arden maintains that the District Court abused its discretion when it failed to grant him credit for a Social Security lump sum disability payment of $9,728 paid to Joyce for his children.

As we stated above, Social Security disability benefits are paid as a result of a parent's disability and serve as a substitute for that parent's lost earning capacity. In this case, the $9,728 lump sum Social Security payment was paid to Arden's children to compensate them for overdue benefits for the period from May 1993, the date of Arden's eligibility, through the date when their monthly Social Security benefit payments commenced. They were paid in recognition of Arden's inability to earn income since November 1992. As such, that lump sum was an accumulation of monthly Social Security payments which accrued for the children's benefit. The lump sum payment, then, like the other monthly Social Security disability payments, should have been credited to Arden's monthly child support obligation for the months during which the lump sum accumulated. *See, e.g., Romero v. Romero* (N.M. Ct. App. 1984), 682 P.2d 201, 202.

This interpretation is supported by Rule 46.30.1542(1)(d), ARM, which provides:

> (1) Social security benefits which are based on the earning record of the non-custodial parent shall be considered in establishing new support orders or modification of existing orders under the following conditions:
> . . . .

17

> (d) whenever a custodial parent receives for the benefit of the child, a lump sum payment which represents an accumulation of monthly benefits:
>     (i) the lump sum payment should not be treated as income of the parent;
>     (ii) <u>the lump sum should be credited to the child support obligation for each month a payment accumulated for the child's benefit</u> . . . .

(Emphasis added.)

We hold that the lump sum payment received by Joyce for the benefit of her children should have been credited to Arden's child support obligation from May 1993 until the monthly benefits commenced. We further hold that, since those benefits completely offset Arden's monthly support obligation, any support payment made by Arden during that time was in addition to his actual obligation and should now be credited to his accrued arrearages. Accordingly, we reverse the order of the District Court which refused to apply the Social Security lump sum disability payment made to Arden's two children as a credit toward Arden's accrued arrearages. We remand to the District Court with instructions to (1) apply the lump sum toward any arrearages which accrued during the period of Arden's disability and prior to the commencement of monthly Social Security payments to Arden's children, and to (2) credit Arden's accrued arrearages by the amount of child support paid directly by Arden during that period.

## ISSUE 5

Did the District Court err when it refused to reduce Arden's accrued arrearages by $1,593.20, as recommended by the Child Support Enforcement Division?

18

On May 19, 1994, the District Court entered an order in which it determined that Arden owed child support arrearages in the aggregate of $17,200.00, in addition to $850 for attorney fees and $500.00 for past due arrearages, for a total judgment of $18,550.00. In April 1995, Arden applied to the CSED for a credit of $4,020.88 against his past-due obligation. Following a review of Arden's application, CSED granted him credit in the amount of $1,593.20.

In his memorandum in support of his petition for modification of child support, Arden maintained that the District Court should reduce his accrued arrearages by the amount credited by CSED. In support of his claim, Arden submitted CSED's letter granting him a credit in the amount of $1,593.20 and CSED's debt computation worksheet which showed Arden's accrued arrearages in the amount of $15,467.87.[1]

In its order modifying Arden's child support obligation, the District Court did not acknowledge CSED's determination that Arden's past-due arrearages should be reduced. Although the court did not directly address the issue, it stated:

> All prior orders of this Court except as may be modified herein shall remain in full force and effect. This includes but is not limited to the judgment for child support arrearage in the amount of $18,550.

[1]CSED's computation does not include either the $850 in attorney fees or the $500 in past due arrearages which the District Court determined that Arden owed in its order of May 19, 1994.

19

(Emphasis added.) The court allowed, however, that either Arden or Joyce could have the court's child support award "adjusted by the CSED."

The District Court's refusal to apply a credit to Arden's child support arrearages in the amount of $1,593.20, as allowed by CSED, was clearly an abuse of discretion. Section 40-5-601(6), MCA, provides that:

> Certified payment records maintained by a clerk of court or administrative agency authorized by law or by the support order to collect support are admissible in a [civil contempt] proceeding under this section and are prima facie evidence of the amount of support paid and any arrearages under the support order.

In this case, the Child Support Enforcement Division of the Department of Social and Rehabilitation Services (now the Department of Public Health and Human Services) filed a notice of registration, pursuant to § 40-5-271, MCA, of the District Court's order of May 19, 1994. Section 40-5-271(4), MCA, provides that once an order is registered by CSED it "must be treated in the same manner and have the same effect as a support order issued by the department." CSED was therefore authorized by law to collect Arden's child support obligation. Accordingly, pursuant to § 40-5-601(6), MCA, its payment records were prima facie proof of Arden's accrued arrearages.

At the District Court's concomitant hearing on Arden's motion for child support modification and Joyce's motion for contempt, Arden submitted CSED's letter granting him a credit in the amount of $1,593.20 and CSED's debt computation worksheet which showed Arden's accrued arrearages in the amount of $15,467.87. The

20

exhibits were not objected to as hearsay and were admitted. Both exhibits constituted prima facie proof, pursuant to § 40-5-601(6), MCA, that Arden's accrued arrearages pursuant to the District Court's order of May 19, 1994, had been reduced by $1,593.20. Because Joyce submitted no evidence to refute that proof, the District Court was required to accept CSED's determination of Arden's accrued arrearages, which CSED had calculated should be reduced by $1,593.20.

We therefore hold that the District Court abused its discretion when it reaffirmed its judgment against Arden for child support arrearages in the amount of $18,550.00, without considering CSED's calculated reduction of Arden's arrearages. We remand to the District Court with instructions to include in its order modifying Arden's child support a reduction of his accrued arrearages by $1,593.20, as calculated by CSED.

On the basis of our holdings, we affirm in part and reverse in part the child support modification order of the District Court and remand to that court for a determination of Arden's child support obligation consistent with this opinion, the Uniform Child Support Guidelines, and Rule 46.30.1542, ARM.

_____
Justice

We concur:

_William E. Hunt Sr_

_W. William Brotherton_

_____
Justices

November 26, 1996

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

John H. Gilliam, Esq.
Skjelset Law Offices
Box 4102
Missoula MT  59806-4102

Clinton Kammerer, Esq.
KAMMERER LAW OFFICES
101 E. Broadway, #200
Missoula MT  59802

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy